UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **23-60161-CR-ALTONAGA/STRAUSS**

18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

KELSEY FREITUS,

                Defendant.

_____/

FILED BY KAN D.C.
Sep 7, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

*The Small Business Administration*

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

*The Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-

19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

4. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

5. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

6. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### *The Economic Injury Disaster Loan Program*

7. Another related response to the COVID-19 outbreak was an expansion of an existing disaster-related program – the Economic Injury Disaster Loan ("EIDL") – to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds could have been used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits, or for the expansion of a business.

8. Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury, and applicants applied for EIDL funds directly through the SBA via an online portal and application. The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including: information about the gross revenues for the business prior to January 31, 2020; and the cost of goods sold. Applicants electronically certified that the information provided was true and accurate and were warned that any false statement or misrepresentations to the SBA, or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

9. EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington. EIDL disbursement payments were initiated by the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the Treasury using computer servers located in the state of Virginia.

### **The Defendant and Related Entities**

10. Matrimony Entertainment LLC ("Matrimony Entertainment") was a company incorporated under the laws of Florida, with its principal place of business in Broward County,

Florida, and held an account ending in 8773 at Chase Bank (the "Matrimony Entertainment Account").

11. Defendant **KELSEY FREITUS**, a resident of Broward County, Florida, was the registered agent and manager of Matrimony Entertainment LLC.

12. Bank 1 was a financial institution based in Montgomery County, Pennsylvania, and was an approved SBA lender of PPP loans.

13. Bank Processor 1 was a third-party company processor, based in Hudson County, New Jersey, that processed PPP loan applications for Bank 1. Small businesses seeking PPP loans could apply electronically through Bank Processor 1 for PPP loans. Bank Processor 1 would review the loan application for Bank 1, which would then, if approved, disburse the loan funds to the applicant.

## COUNTS 1–2
## Wire Fraud
## (18 U.S.C. § 1343)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates specified below, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**KELSEY FREITUS,**

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and

foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendant to unlawfully enrich himself by: (a) submitting and causing the submission, via interstate wire communication, of false and fraudulent applications for PPP and EIDL loans made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; (b) concealing and causing the concealment of these false and fraudulent applications; and (c) diverting fraud proceeds for his personal use and to further the fraud.

## MANNER AND MEANS OF THE SCHEME AND ARTIFACE

The manner and means by which **KELSEY FREITUS** sought to accomplish the purpose of the scheme and artifice included, among others, the following:

### *The Fraudulent Matrimony Entertainment PPP Loan*

4.      On or about May 22, 2020, **KELSEY FREITUS** submitted, and caused the submission of, a PPP Loan application to Bank 1 (the "PPP Application"). In the PPP Application, **FREITUS** falsely and fraudulently stated that Matrimony Entertainment had 16 employees and an average monthly payroll of $71,234. **FREITUS** also falsely certified that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application" and "will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments."

5.      Among the supporting documents **KELSEY FREITUS** submitted in support of the fraudulent PPP Application was a fraudulent federal Tax Form 941 for the fourth quarter of 2019

5

purportedly submitted to the Internal Revenue Service ("IRS"). In fact, Matrimony Entertainment never submitted any such tax form to the IRS.

6. As part of the PPP Application submitted to Bank 1, **KELSEY FREITUS** submitted, and caused the submission of, a PPP Promissory Note to Bank 1 in the name of Matrimony Entertainment in the approximate amount of $178,085 (the "PPP Promissory Note"). In the PPP Promissory Note, **FREITUS** falsely and fraudulently certified that all information contained in the PPP Application was true and correct and that he would "use the funds received under this Note for business purposes only and not for personal, family or household purposes."

7. Based on false and fraudulent representations made in the PPP Application and PPP Promissory Note, Bank 1 approved a PPP loan and disbursed the loan proceeds via Bank Processor 1 in the approximate amount of $178,085 to the Matrimony Entertainment Account, via interstate wire transmission.

### *The Fraudulent Matrimony Entertainment EIDL*

8. On or about July 1, 2020, **KELSEY FREITUS** submitted, and caused the submission of, an EIDL application to the SBA in the name of Matrimony Entertainment (the "EIDL Application").

9. In the EIDL Application, **KELSEY FREITUS** falsely and fraudulently represented, among other things, that the company's gross revenues for the twelve months prior to the date of the disaster were $280,000 and that the company had six employees.

10. As part of the EIDL Application process, **KELSEY FREITUS** submitted, and caused the submission of, an EIDL Loan Authorization and Agreement for Matrimony Entertainment to the SBA in the approximate amount of $117,400 (the "EIDL Agreement"). In the EIDL Agreement, **FREITUS** falsely and fraudulently certified that all information in the EIDL

Application was true and correct and that he would "use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter..."

11. Based on the false and fraudulent representations made in the EIDL Application and EIDL Agreement, the SBA approved an EIDL for Matrimony Entertainment and deposited approximately $117,400 into the Matrimony Entertainment Account on or about July 29, 2020.

12. **KELSEY FREITUS** used the funds received from Bank 1 and from the SBA for, among other things, repayment of personal loans and credit card expenditures. Those payments were made for personal purposes and not for any of the approved business purposes allowed by FREITUS's certifications in the PPP Application and the EIDL Agreement.

## USE OF WIRES

13. On or about the dates specified as to each count below, the defendant, **KELSEY FREITUS**, for the purpose of executing and in furtherance of the aforementioned scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, as particularly described below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 1 | May 22, 2020 | Electronic transmission of the PPP Promissory Note for Matrimony Entertainment, from the Southern District of Florida, to Bank Processor 1 through servers outside of Florida. |
| 2 | July 21, 2020 | Electronic transmission of the EIDL Agreement for Matrimony Entertainment, from the Southern District of Florida, to the SBA through servers outside of Florida. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for alleging forfeiture to the United States of America of certain property in which the defendant, **KELSEY FREITUS**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
WILL J. ROSENZWEIG
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

KELSEY FREITUS,
_____/
                Defendant.

CASE NO.: _____

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
☐ Miami     ☐ Key West     ☐ FTP
☒ FTL       ☐ WPB

I do hereby certify that:
1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __3__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:
   (Check only one)                    (Check only one)
   I   ☒ 0 to 5 days                   ☐ Petty
   II  ☐ 6 to 10 days                  ☐ Minor
   III ☐ 11 to 20 days                 ☐ Misdemeanor
   IV  ☐ 21 to 60 days                 ☒ Felony
   V   ☐ 61 days and over
6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
Will J. Rosenzweig
Assistant United States Attorney
Court ID No. A5502698

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Kelsey Freitus

**Case No:** _____

Count #s: 1–2

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.